IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Maryland)

| | |
|---|---|
| Edwin Drury | * |
| *Plaintiffs,* | * |
| v. | * |
| Officer P. Dziwsnowski, et al. | * |
| *Defendant.* | *   Civil Action No.:  1:15-cv-03845-MJG |

* * * * * * * * * * * *

**OPPOSITION TO DEFENDANT ANNE ARUNDEL COUNTY'S MOTION TO DISMISS**

NOW COMES, Plaintiff Edwin Drury, by and through his undersigned counsel, Anton L. Iamele and IAMELE & IAMELE, LLP who hereby opposes Defendant Anne Arundel County's Motion to Dismiss with respect to Count VII – "Constitutional Claim Arising Under Maryland State Declaration of Rights and *Longtin* Claim", Count IX – "Under 42 U.S.C. § 1983 for Inadequate Supervision and Discipline", and Count X – "Violation of Civil Rights Under 42 U.S.C. § 1983 – *Monell* Claim."[1] Plaintiff Drury respectfully asserts that he has set forth sufficient factual allegations compelling a denial of the dispositive motion. Plaintiff states further in support of this opposition:

**I.   Introduction**

This is a police misconduct case in which Plaintiff Edwin Drury asserts that he was detained without legal justification and subjected to excessive force carried out by Defendant Officers Dziwanowski and Hicks during an April 24, 2014 police encounter. Plaintiff Drury

---

[1] Plaintiff is not disputing the portion of Defendant Anne Arundel County's Motion pertaining to Count II- False Arrest and Count III-False Imprisonment. Plaintiff respectfully requests that, in an Order deciding the pending Dispositive Motion, Defendant Anne Arundel County only be identified as having been dismissed without prejudice in connection with these two counts. Plaintiff will be continuing with the causes of action set forth in Count II and Count III as against Defendant Officers Dziwanowski and Hicks.

further asserts that Defendant Anne Arundel County had a custom of allowing such unconstitutional actions that is evidenced by the failure of its officers to undertake any efforts to abate the illegal arrest and excessive force, as well as, its conduct furthering, and/or maintaining the arrest, criminal charges, and incarceration of Plaintiff Drury.

II.     **Standard of Review - Motion to Dismiss**

Dismissal under Rule 12 is "merely a decision on the pleadings. For that reason, such motions are granted sparingly and with caution." *See Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 511 F.2d 678, 680 (4th Cir. 1975) *rev'd* on other grounds, 425 U.S. 738, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (U.S.N.C. 1976). "Dismissal under Rule 12(b)(6) is appropriate only if a plaintiff fails to state a claim that is plausible on its face." *Owens v. Baltimore City State's Attorney's Office*, 767 F. 3d 379, 396 (4th Cir. 2014). In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), the court must consider the well-pleaded material allegations in the light most favorable to the Plaintiff and accept those factual allegations as true. *Flood v. New Hanover County*, 125 F. 3d 249, 251 (4th Cir. 1997) (citing *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F. 3d 213, 217-18 (4th Cir. 1994)). "A claim has 'facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' To satisfy the standard, a plaintiff must do more than allege facts that show the 'sheer possibility' of wrongdoing. *Owens*, 767 F. 3d at 396 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'A complaint should not be dismissed…unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Bing v. General Motors Acceptance Corp.*, 237 F. Supp. 911, 912 (E.S.S.C. 1965) (quoting *Conley v. Gibson*, 355 U.S. 41, 45 (1957). Generally, when a question of fact arises, the question should not be decided on a Motion to Dismiss. *See*

*Hospital Bldg. Co.*, 511 F.2d at 680.

### III.   Argument

Plaintiff has plead the specific factual basis supporting his causes of action against Defendant Anne Arundel County. For the reasons stated herein, Defendant's pending dispositive motion should accordingly be denied. Plaintiff respectfully requests that this honorable Court deny the motion and commence with pretrial discovery.  *See Haley v. City of Boston*, 657 F.3d. 39, 53 (1st Cir. 2011)("Although couched in general terms, Haley's allegations contain sufficient factual content to survive a motion to dismiss and open a window for pretrial discovery.")

####   A.   §1983 *Monell* liability in the context of 12(b)(6) Motion to Dismiss

The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures. U.S. CONST. AMEND. IV; *See also Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996) ("The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual without probable cause is unreasonable." ); *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)*; Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 2d (1978). Searches and seizures conducted in violation of the Fourth and Fourteenth Amendment are actionable under section 42 U.S.C § 1983, which provides that "[e]very person," who, under color of state law causes the violation of another's federal rights shall be liable to the party injured by his conduct.. *See e.g. Monroe v. Pape*, 365 U.S. 167, 81 S. Ct. 473 (1961)(overruled on other grounds by, *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978)).  Claims of excessive force are likewise vindicable under section 1983.

The Fourth Amendment's prohibition against unreasonable seizures protects not only against arrests made without probable cause, but also against the use of excessive force in

making arrests that are themselves supported by probable cause. *See Tennessee v. Garner*, 471 U.S. 1, 7-8, 105 S.Ct. 1694 (1985) (The Supreme Court flatly rejected the suggestion that the Fourth Amendment's reasonableness requirement is satisfied so long as the seizure itself is supported by probable cause, holding that the reasonableness of a seizure depends not only on when it was made but also on how it was carried out); *See also Graham v. Connor*, 490 U.S. 386, 395, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989) (Claims that law enforcement officers used excessive force when making an arrest "should be analyzed under the Fourth Amendment."); *Jenkins v. Averett*, 424 F.2d 1228, 1232 (4th Cir. 1970) (Fourth Amendment provides constitutional protection against use of excessive force during arrest that is vindicable through § 1983).  Reasonableness in the context of an excessive force claim is determined by the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 (1978), the Supreme Court held that municipalities qualify as "persons" under section 1983, rendering them amendable to suit for constitutional deprivations.  Although the *Monell* Court did not address the "full contours of municipal liability under § 1983", it established that liability would attach "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy…" are the "moving force of the constitutional violation." *Monell*, 436 U.S. 658, 694. The *Monell* Court also indicated that the existence of a "custom" might properly be gleaned from evidence of "persistent and wide spread" practices. 436 U.S. at 691; *See also Owens*, 767 F. 3d at 402 (quoting *Spell v. McDaniel*, 824 F. 2d 1380, 1386-91) ("A plaintiff must point to a 'persistent

and widespread practice of municipal officials," the "duration and frequency" of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their "deliberate indifference.")

Defendant correctly notes that in order to impose liability against Anne Arundel County, Plaintiff Drury will ultimately be required to prove a "policy" or "custom" of the municipality which caused the constitutional violation alleged in his Compliant. For purposes of considering the sufficiency of Plaintiff's Complaint, however, there is no requirement that Plaintiff specifically plead the historical origin of either. "A decision on a single occasion may be enough to establish an unconstitutional municipal policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) (plurality opinion); *Brown v. Bryan County, OKI,* 219 F.3d 450, 458-60 (5th Cir. 2000). The Supreme Court explained:

> In the years since *Monell* was decided, the Court has considered several cases involving isolated acts by government officials and employees. *We have assumed that an unconstitutional government policy could be inferred from a single decision* taken by the highest officials responsible for setting policy in that area of the government's business.

*Praprotnik*, 485 U.S. at 123(plurality opinion)(emphasis supplied); *see also Owen v. City of Independence,* 445 U.S. 622 (1980); *Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981); *and Pembaur*, 475 U.S. 469. The Supreme Court explained further in *Praprotnik*:

> [I]n *Pembaur*… we undertook to define more precisely when a decision on a single occasion may be enough to establish an unconstitutional municipal policy. Although the Court was unable to settle on a general formulation, Justice BRENNAN's opinion articulated several guiding principles. First a majority of the Court agreed that municipalities may be held liable under §1983 only for acts for which the municipal itself is actually responsible, that is, acts which the municipality has officially sanctioned or ordered. Second, only those municipal officials who have final

> policymaking authority may by their actions subject the
> government to §1983 liability. Third, whether a particular official
> has final policymaking authority is a question of state law. Fourth,
> the challenged action must have been taken pursuant to a policy
> adopted by the official or officials responsible under state law for
> making policy in that area of the city's business.

*Praprotnik*, 485 U.S. at 123 (internal citations and quotes omitted) (plurality opinion).

Moreover, Plaintiff Drury is not required to expressly describe a controlling custom or the municipal officials responsible for the same. In *Spellman v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987), the Fourth Circuit Court of Appeals provide a basic definition of the term "policy" in the context of a *Monell* analysis as follows:

> "Policy" in this context implies most obviously and narrowly a
> "course of action consciously chosen from among various
> alternatives" respecting basic governmental functions, as opposed
> to episodic exercises of discretion in the operational details of
> government.

*Id.* at 1386 (internal citations omitted). Noting that official policy can also consist of custom or usage, the court then explained when policy can be implied from the failure of municipal officials to correct unconstitutional conditions:

> "Custom and usage" in the sense of "persistent and widespread…
> practices" by municipal agents and employees may be attributed to
> a municipality when the duration and frequency of the practices
> warrants a finding of either actual or constructive knowledge by
> the municipal governing body that the practices have become
> customary among its employees… Constructive knowledge may
> be evidenced by the fact that the practices have been so widespread
> or flagrant that in the proper exercise of its official responsibilities,
> the governing body should have known of them.

*Id.* at 1386 (internal citations omitted). Where constructive knowledge of an unconstitutional practice may be inferred, it is also appropriate to conclude that policymakers had acquiesced to such practices even where a plaintiff cannot affirmatively prove that they consciously refused to make reforms. See e.g. *Baron v. Suffolk County Sherriff's Dept.,* 402 F.3d 225, 242 (1st Cir.

2005)("Although [the sheriff] may not have had actual knowledge of the custom, however, municipal liability can also be based on a policymaker's constructive knowledge -- that is, if the custom is so widespread that municipal policymakers should have known of it.); *McNabola v. Chicago Transit Authority*, 10 F.3d 510, 511 (7th Cir. 1993)(" A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice."); *Surlocco v. New York City Police Department*, 971 F.2d 864, 871 (2d Cir. 1992)("[A] § 1983 plaintiff may establish a municipality's liability by demonstrating that the actions of subordinate officers are sufficiently widespread to constitute the constructive acquiescence of senior policymakers."); *Brown v. City of Fort Lauderdale*, 923 F.2d 1474 (11th Cir. 1991)("[A] long-standing and widespread practices deemed authorized by the policymaking officials because they must have known about it but failed to stop it.")

A *Monell* claim may also be correctly asserted based upon an allegation of improper training, supervision and discipline of officers. In *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197 (1989), The Supreme Court held that inadequacy of training may serve as a basis for § 1983 liability, in circumstances where the failure to train amounts to "deliberate indifference" to the constitutional rights of persons with whom the police may come in contact. The court explained that liability would rest where

> in light of the duties assigned to specific officers or employees the need for more different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Id.*, 489 U.S. 378, 390.  This deliberate indifference standard likewise applies to claims of inadequate supervision and discipline when they are evaluated outside of the context of policy or custom.

> Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier. To survive on a motion to dismiss under Rule 12(b)(6), a complaint need only allege facts which, if true, state a claim to relief that is plausible on its face." *Owens*, 767 F. 3d at 403 (internal citations omitted). "The recitation of facts need not be particularly detailed, and the chance of success need to not be particularly high. A plaintiff fails to state a claim only when he offers labels and conclusions or formulaically recites the elements of his §1983 cause of action.

*Owens*, 767 F. 3d at 403. Plaintiff has supported its claims against Anne Arundel County with specific factual averments. Available inferences preclude dismissal of the claims against Defendant Anne Arundel County in this case.

### B. **Plaintiff has Plead Sufficient Facts to Support State and Federal Constitutional Claims Against the County**

Defendant's Motion to Dismiss rests on fundamental misunderstandings of the factual averments underpinning Plaintiff's Complaint. The failure to appreciate these factual averments rendered the Defendant unable to understand the thrust of Plaintiff's allegations giving rise to his *Monell* and *Longtin* claims.

First, Defendant alleges that the Complaint includes an averment that the police officers involved in this case, and by extension Anne Arundel County, had reached a determination that the "rightful owner" of the 2001 Hudson Trailer was someone other than Plaintiff Drury. (Motion to Dismiss, p.8) However, the Complaint very clearly explains how and why ownership interest of the trailer was in dispute. (Complaint ¶¶ 10-15, 20-21). The Complaint also includes averments that Plaintiff Drury had expressly advised the named defendant officers that he had "had purchased the Husdson trailer from Dale West for the sum of $2,500." (Complaint ¶ 19, 30) Neither the defendant officers nor "any member of the Anne Arundel County Police Department had conducted any investigation concerning the sale(s) of the Hudson trailer." (Complaint ¶¶ 20-

21) Accordingly, "Defendant Dziwanowski and Defendant Hicks did not have any information and/or basis to form any conclusions about the ownership of the Hudson trailer and/or Plaintiff Drury's possessory interest in the Hudson trailer." (Complaint ¶22)

Second, according to the Defendant, Plaintiff Drury was "injured while being arrested for felony theft." (Motion to Dismiss, p. 9 and 13) The Complaint does not, however, include any reference to the Plaintiff having been lawfully arrested in connection with a criminal occurrence, let alone a felony theft. Rather, Plaintiff Drury has averred that he was (1) arrested in the absence of probable cause, legal justification or a valid warrant (Complaint ¶¶18, 23, 27, 31, 32-33, 38-39) ; (2) by officers who had no legal right to gain entry into his home, effect any detention and/or utilize force (Complaint ¶¶ 30-31, 33-36); and (3) that these actions were taken by the defendant officers in connection with a happening about which they had no personal knowledge, had not observed, and had not properly investigated. (See foregoing paragraph.) Plaintiff Drury expressly averred within his Complaint that although he was charged with a number of crimes following his offense, they were all "dismissed as unfounded." (Complaint ¶¶ 30-31, 33-36)

Although Defendant Anne Arundel County may not agree with Plaintiff Drury's assertions, it apparently understands that Plaintiff's *Monell* and *Longtin* claims arise from a contention that it had a custom allowing or fostering such conduct. As noted by Defendant, the "allegations in the Complaint are that the County permitted or failed to discipline its officers for using excessive force to unlawfully arrest and charge the Plaintiff…" (Motion to Dismiss, p. 7) Defendant also correctly understood from the allegations of the Complaint that Plaintiff Drury was "suggest[ing] that the County has [a] type of policy that permits police to unlawfully arrest and use excessive force for no reason." (Motion to Dismiss, p. 9) Defendant argues that the

assertion that it had allowed the conduct should be viewed by this Court as incredible. However, the process of entertaining a Motion to Dismiss is not the time for such determinations or evidentiary evaluation.

Defendant Anne Arundel County has correctly acknowledged that inferences regarding a custom and the potential of constructive acquiescence can render Plaintiff Drury's *Monell* and *Longtin* claims viable. (Motion to Dismiss, p. 8 (quoting *Monell,* 436 U.S. 658, 690-691) ("… although the touchstone of the § 1983 action against a government body is an allegation that the official policy is responsible for a deprivation of rights protected by the Constitution, local governments 'may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels.'") In the instant case, Plaintiff has made such allegations of a custom and overt or constructive acquiescence to unconstitutional behavior throughout the Complaint.

Plaintiff Drury initially described the basis for his claims against Defendant Anne Arundel County as follows:

> Defendant Anne Arundel County Maryland is liable due to its acquiescence, tolerance, promotion, and furtherance of the known patterns of unlawful conduct, unconstitutional stops, detentions, seizures, and excessive force, as well as, additional acts and omissions that established policies and customs which proximately caused Plaintiff's injuries. Defendant Anne Arundel County Maryland is also liable for failing to adequately train, supervise, and discipline the known officers in an effort to deter and/or prevent the unconstitutional and illegal conduct of the officers as described herein.

(Complaint, ¶ 3)  He has further included express averments within the Complaint that, among other things, "Anne Arundel County developed and maintained policies or customs (1) exhibiting deliberate indifference to the constitutional rights of persons… [including Plaintiff Drury]; (2) inadequately and improperly investigate warrantless arrests, citizen complaints of

police misconduct, and unlawful warrantless arrests; (3) to inadequately supervise and train its police officers… thereby failing to adequately discourage further constitutional violations on the part of its police officers. (Complaint, ¶¶ 101-106, Count X – Violation of Civil Rights Under 42 U.S.C. § 1983 – *Monell* Claim)  Within the Complaint, it is also stated that Defendant Anne Arundel County "encouraged, acquiesced in, or condoned" unconstitutional behavior by its officers. (Complaint, ¶¶ 86-89, Count VII – Constitutional Claim Arising Under Maryland State Declaration of Rights and *Longtin* Claim) Finally, Plaintiff has alleged that Defendant Anne Arundel County failed to adequately "supervise and control" it officers in an effort to prevent the alleged unconstitutional behavior.  (Complaint, ¶¶ 66-100, Count IX – Under 42 U.S.C. § 1983 for Inadequate Supervision and Discipline)

These allegations are supported with specific factual averments from which it can, and must at this time, be inferred that Defendant Anne Arundel County had a custom of tolerating and/or allowing unconstitutional behavior.

Plaintiff Drury states in the Complaint that he "contacted the Anne Arundel County Police Department" on April 23, 2014, after becoming "concerned about the tenor of []his telephone conversation with Defendant Dziwanowski, or alternatively, Defendant Hicks." (Complaint, ¶ 24).  This communication with Anne Arundel County occurred the day prior to the unsupported search and seizure, false arrest and application of excessive force described in the Complaint. Defendant Anne Arundel County failed to undertake any efforts, however, to control, dissuade, supervise or discipline the offending officers, or alternatively, shield Plaintiff Drury for subject occurrence of April 24, 2014.  (Complaint, ¶ 25)

Within the Complaint, Plaintiff also explains members of Defendant Anne Arundel County's police department were present to observe the overtly unconstitutional behavior by

officers Dziwanowski and Hicks, but failed to undertake any effort to stop of abate the happening. This was described as follows:

> At the time that Plaintiff Drury was being removed from the residence, there were approximately seven police cars parked in close proximity to the happenings. Unidentified members of the Anne Arundel County police officers who had arrived on the scene did not initiate any effort to deter the unlawful detention and application of excessive force and otherwise allowed, facilitated and acquiesced to the improper conduct of Defendant Dziwanowski and Defendant Hicks.

(Complaint, ¶ 37) The Complaint also includes factual allegations that Defendant Anne Arundel County's command hierarchy took no action in response to notice of the unconstitutional seizure:

> 43. Plaintiff Drury was transported by Defendant Dziwanowski and Defendant Hicks from his residence to Eastern District Precinct House in Anne Arundel County.
>
> 44. Defendant Dziwanowski and Defendant Hicks removed Plaintiff Drury from the cruiser and transported him into the precinct house. During this process, Plaintiff Drury again advised Defendant Dziwanowski and Defendant Hicks that he was injured and in severe pain. The defendants ignored this report.
>
> 45. Plaintiff Drury was processed and placed in a holding cell at the Eastern District Precinct House. Once in the precinct house, he was questioned by Anne Arundel County Detective J. McNemar. Plaintiff Drury asked Detective McNemar to notify supervision about his arrest and injuries. Detective McNemar advised Anne Arundel County Sergeant Ronaghan and Acting Sergeant Duvall about Drury. Thereafter, Plaintiff Drury was formally processed, photographed and detained.
>
> 46. At all times relevant to this Complaint members of the Anne Arundel County Police Department and the hierarchy of the Anne Arundel County Police Department were on notice that Plaintiff Drury had been improperly arrested and had also been subjected to excessive force. The hierarchy of the Anne Arundel County Police Department ratified, acquiesced to and furthered the unconstitutional conduct of Defendant Dziwanowski and Defendant Hicks by perpetuating his arrest and detention.

(Complaint, ¶¶ 44-46)

The forgoing factual averments support (1) an inference that Defendant Anne Arundel County had custom or allowing unconstitutional conduct in the form of unsupported arrests and excessive force; and (2) a conclusion that that Defendant Anne Arundel County "ratified the unlawful actions of Defendants Dziwanowski and Hicks by allowing, furthering and/or maintaining the arrest, criminal charges, and incarceration of Plaintiff Drury." (Complaint, ¶ 51) Accordingly, Plaintiff Drury's claims in Counts VII, IX and X have been properly plead and adequately supported by specific factual averments.

## IV.    Conclusion

The factual record before the Court supports a conclusion that Plaintiff Edwin Drury has stated a claim upon which relief can be granted against Defendant Anne Arundel County with respect to Count VII –*Longtin* Claim , County IX - Inadequate Supervision and Discipline Claim, and Count X - *Monell* Claim. Defendant has failed to set forth any reason why these claims should be denied at this time. Plaintiff Drury respectfully request that this Honorable Court deny Defendant's Motion to Dismiss and allow the parties to commence pretrial discovery.

WHEREFORE, Plaintiff Edwin Drury respectfully requests that this Honorable Court deny Defendant Anne Arundel County's dispositive motion, and grant such further and additional relief as it deems to be necessary and appropriate.

Respectfully submitted,

IAMELE & IAMELE, LLP

_____- s _____
Anton L. Iamele, Federal Bar No. 14845
201 North Charles Street, Suite 400
Baltimore, Maryland 21201
aiamele@iamelelaw.com
Telephone: 410-779-6160
Facsimile: 410-779-6161
*Counsel for Plaintiff Edwin Drury*

## **HEARING REQUEST**

Plaintiff hereby requests that a hearing be held on Defendants Anne Arundel County, Maryland's Motion to Dismiss, and the instant Opposition to the same.

_____- s-_____
Anton L. Iamele

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on this **12th** day of **February, 2016**, a copy of the foregoing Opposition to Defendants Anne Arundel County, Maryland's Motion to Dismiss was transmitted by way of this Court's electronic filing system and posted sent by first-class, postage prepaid mail, to the following:

Philip E. Culpepper
Senior Assistant County Attorney
Anne Arundel County Office of Law
2660 Riva Road, 4th Floor
Annapolis, MD 21401

_____-s-_____
Anton L. Iamele