IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWIN DRURY                         *

      Plaintiff                  *

    vs.                             *    CIVIL ACTION NO. MJG-15-3845

OFFICER P. DZIWANOWSKI, et al.   *

      Defendants                 *

\*        \*        \*        \*        \*        \*        \*        \*        \*

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it the Motion for Summary Judgment [ECF No. 21] filed by Defendants and the materials submitted by the parties relating thereto.  The Court finds that a hearing is unnecessary.


I.   INTRODUCTION

A.   Factual Background

On April 24, 2013, Plaintiff Edwin Drury ("Drury") was arrested by two Anne Arundel County police officers, Cpl. Paul Dziwanowski ("Dziwanowski") and Cpl. William Hicks ("Hicks") (collectively referred to as "Defendants").  Drury presents claims against these Defendants, claiming that they wrongfully arrested him and, in the course of the arrest, violated his rights secured by the United States and Maryland Constitutions.

The parties present substantially conflicting versions of the material facts.

The events at issue grew out a convoluted dispute regarding ownership of a trailer.  It suffices, for present purposes, to greatly summarize the matter.

In or about May 2012, Bradford West ("Mr. West") and/or his then wife, Ms. Dale Martin (referred to herein as "the First[1] Wife"), owned a Hudson trailer but were involved in divorce proceedings.  Drury paid the First Wife for the trailer and was given a bill of sale from her but not the title document.

Shortly thereafter the couple was divorced and there were issues in the divorce regarding the ownership of the trailer. About a month after the divorce, Mr. West married Cathy Jo (referred to as "the Second Wife") and died shortly thereafter. The Second Wife contended that she owned the trailer and refused to provide the title document to the First Wife or Drury.  In February 2014, John Bradford ("Mr. Bradford") paid the Second Wife for the trailer who gave him the title document.  Mr. Bradford, using with the title document, had the Department of Motor Vehicles transfer the title and he became the registered owner of the trailer.

---

[1]     She was his then wife and is assumed for present purposes to have been his first wife.

Mr. Bradford was, however, not able to obtain possession of the trailer and found that it was possessed by Drury, who claimed ownership by virtue of the bill of sale from the First Wife.

On April 23, 2014, Mr. Bradford contacted the Anne Arundel County Police claiming that Drury was in possession of stolen property, i.e., the trailer.  By the end of the day, Dziwanowski had spoken with Drury and Mr. Bradford.  Dziwanowski understood that there was a dispute regarding the ownership of the trailer and suggested that the two of them seek to reach an agreement. However, there was no agreement.

On April 24, Mr. Bradford called Dziwanowski and told him that he wanted Drury criminally charged.  Dziwanowski, with another officer, Hicks, proceeded to Drury's residence.  While the parties agree that Defendants arrested Drury at his residence, they present materially different versions of the event relating to the arrest.


B.   Procedural Context

In the Complaint, Plaintiff asserted claims against Anne Arundel County, Maryland ("the County"), Dziwanowski, and Hicks in ten Counts.

Count I:      Battery - Dziwanowski and Hicks.

Count II:          False Arrest – Dziwanowski, Hicks, and the
                   County.

COUNT III:         False Imprisonment – Dziwanowski, Hicks, and
                   the County.

COUNT IV:          Malicious Prosecution - Dziwanowski and
                   Hicks.

COUNT V:           Conspiracy - Dziwanowski and Hicks.

COUNT VI:          Violation of Maryland Declaration of Rights
                   - Dziwanowski and Hicks.

COUNT VII:         Maryland State Declaration of Rights <u>Longtin</u>
                   Claim – County.

COUNT VIII:        42 U.S.C. § 1983- Violation of Fourth
                   Amendment - Dziwanowski and Hicks.

COUNT IX:          Inadequate Supervision and Discipline under
                   42 U.S.C. § 1983 - County.

COUNT X:           <u>Monell</u> Claim – County.

By the Memorandum and Order Re: Pending Motions [ECF No. 13] the Court dismissed all claims against the County.

By the instant motion, Dziwanowski and Hicks seek summary judgment in regard to all claims against them.


II. <u>SUMMARY JUDGMENT STANDARD</u>

A motion for summary judgment shall be granted if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c).  The well-established principles pertinent to such motions can be distilled to a simple statement.

The Court may look at the evidence presented in regard to the motion for summary judgment through the non-movant's rose colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  E.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

III. DISCUSSION

Drury presents claims against Dziwanowski and Hicks for:

- Battery – Count I

- False Arrest – Count II

- False Imprisonment – Count III

- Malicious Prosecution – Count IV

- Conspiracy – Count V

- Constitutional rights violation (state) – Count VI

- Constitutional rights violation (federal) – Count VIII

A.   <u>Legality of Drury's Arrest</u>

Defendants arrested Drury without a warrant and charged him with theft of less than $1,000 (misdemeanor under Md. Code Ann., Crim. Law § 7-104), unauthorized removal of property (misdemeanor under Md. Code Ann., Crim. Law § 7-203), second degree assault, and resisting arrest.   Charge Summary [ECF No. 25-17].   Defendants contend that the arrest was legal pursuant to Md. Code Ann., Crim. Proc. § 2-203 (2008 Repl. Vol.) that provides, in pertinent part:

> (a) A police officer without a warrant may arrest a person if the police officer has probable cause to believe:
>
> > (1) that the person has committed [an enumerated crime]; and
> >
> > (2) that unless the person is arrested immediately, the person:
> >
> > > (ii) may cause  . . . property damage to another;

The enumerated crimes in § 2-203 include "a theft crime where the value of the property or services stolen is less than $1,000 under § 7-104 or § 7-105 of the Criminal Law Article." <u>Id.</u>

"Probable cause exists when the facts and circumstances within an officer's knowledge — or of which he possesses reasonably trustworthy information — are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." <u>Wadkins v. Arnold</u>, 214

F.3d 535, 539 (4th Cir. 2000)(citing <u>Brinegar v. United States</u>,
338 U.S. 160, 175–76 (1949)).

There is no doubt that when Dziwanowski decided to arrest
Drury he had reasonably trustworthy — in fact indisputable —
information that Mr. Bradford was the legal title holder of the
trailer at issue, that Mr. Bradford did not give Drury any right
to possess the trailer, and that Drury had taken possession of
the trailer and refused to give the registered owner, Mr.
Bradford, possession.[2]   Thus, there is no factual dispute
regarding Defendants having probable cause to believe that Drury
had committed a theft crime and that the value of the stolen
property was at least[3] an amount less than $1,000.

---

[2]   Certainly, Dziwanowski knew that Drury claimed to have
purchased the trailer from Ms. Martin.  However, an officer's
knowledge that an apparent offender <u>may</u> have a defense against a
charge does not necessarily negate probable cause.  <u>See</u> <u>Jocks v.
Tavernier</u>, 316 F.3d 128, 135–36 (2d Cir. 2003) ("We did not
impose a duty on the arresting officer to investigate
exculpatory defenses offered by the person being arrested or to
assess the credibility of unverified claims of justification
before making an arrest.").
[3]   If the property value was in excess of $1,000, the
applicable crime would be a felony under Md. Code Ann., Crim.
Law § 7-104 (2012 Repl. Vol.), and a warrantless arrest would
have been justified.  <u>See</u> <u>Ashton v. Brown</u>, 660 A.2d 447, 472 (Md.
1995)(noting a police officer is legally justified in making a
warrantless arrest "where he has probable cause to believe that
a felony has been committed, and that the arrestee perpetrated
the offense").

However, the parties dispute whether Defendants had probable cause to believe that Drury would commit property damage if not immediately arrested.

Dziwanowski states that that Mr. Bradford told him that Drury had said during a phone call that he would destroy the trailer rather than return it. Dziwanowski Dep. [ECF No. 21-3] 165:15-18.  If the jury finds that this statement was made, it could find that there was probable cause to believe that, absent immediate arrest, Drury may cause damage to Mr. Bradford's property.

However, there is evidence that could cause a reasonable jury to find that there was no probable cause to believe that there was concern for immediate property damage absent arrest. Mr. Bradford testified that he does not recall Drury's saying he would destroy the trailer. Bradford Dep. [ECF No. 25-3] at 76:2-5.  Furthermore, Drury testified that he told Mr. Bradford he would give him the trailer if Mr. Bradford paid $2,500. Drury Dep. [ECF No. 25-9] 57:1-8.  Furthermore, the trailer itself was not at Drury's house.  Drury states that he told the Defendants that the trailer was being worked on by a friend and he did not know its location. Id. at 73:1-16.

The Court concludes that there are genuine issues of material fact that prevent summary judgment with regard to the

claims based on the legality of Defendants' warrantless arrest of Drury.

B.   Excess Force

The resolution of the question whether Defendants used excess force in effecting Drury's arrest is pertinent to Drury's battery and constitutional claims.

Resolution of the question whether Defendants used excess force in arresting Drury requires an examination of the totality of the circumstances to determine whether the force used was objectively reasonable. Yates v. Terry, 817 F.3d 877, 885 (4th Cir. 2016).   Specifically, the facts and circumstances relating to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" should be taken into account.   Graham v. Connor, 490 U.S. 386, 396 (1989).   The reasonableness of officers' actions must be evaluated "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."   Id. at 397.

The parties present materially conflicting evidence regarding the force used to arrest Drury.

Drury contends that Defendants entered Drury's home and found him sitting on his couch.  Drury contends that Defendants began to lift him off of the couch and pull his arms to place him in handcuffs.  Drury maintains he was asking the Defendants what was happening as they were pulling him off of the couch. Drury claims that after he was standing, one of the Defendants slammed him on the floor and they all fell next to the couch. However, Dziwanowski states that he put Drury on the floor because Drury swung a fist towards his head and then shoved Dziwanowski into a shelf. Statement of Probable Cause [ECF No. 25-18] at 4.  Drury and his son, who witnessed the struggle, both deny this.  Edwin Drury III Dep. [ECF No. 25-14] 35:5.

Dziwanowski further testified that as he was putting his arm around Drury's head, Drury moved so that his mouth was on Dziwanowski's forearm in such a manner that he believed Drury was going to bite him.  Dziwanowski Dep. [ECF No. 21-3] 208:1-3, 10-11.  Drury denies this.

Drury states that while he was on the floor, Dziwanowski struck Drury with his knee several times, causing Drury's ribs to fracture.  Dziwanowski states that he inadvertently put his knee into Drury's side as they were falling to the ground.  Id. at 211:3-9.

Drury claims that while he was pinned on the floor with his head under the couch, Dziwanowski punched his back several times. Edwin Drury III Dep. [ECF No. 25-14] 37:18-20. Defendants claim that the strikes were delivered because Drury actively resisted and refused to release his left arm to be handcuffed. Hicks Dep. [ECF No. 21-5] 71:1-12.

The parties agree, at least, that eventually Drury was handcuffed and escorted out of the home.

It is perfectly clear that the parties present substantial questions of material fact regarding Defendants' alleged use of excess force. A reasonable jury could find Drury's version of the facts and conclude that Defendants used excess force. On the other hand, a reasonable jury could fail to find Drury's version of the facts and conclude that Defendants did not use excess force.

Accordingly, there cannot be summary judgment with regard to the question of whether Defendants used excess force in arresting Drury.

C.   Drury's State Common Law Claims

    1.   Battery

Under Maryland law, "[a] battery occurs when one intends a harmful or offensive contact with another without that person's consent." Nelson v. Carroll, 735 A.2d 1096, 1099 (Md. 1999).

11

Law enforcement officers possess a privilege to commit a battery in the course of a legally justified arrest.  See French v. Hines, 957 A.2d 1000, 1037 (Md. Ct. App. 2008).[4]  However, a law enforcement officer's privilege to commit a battery in the course of a legally justified arrest "extends only to the use of reasonable force, not excessive force.  To the extent that the officer uses excessive force in effectuating an arrest, the privilege is lost."  Id. Put more simply, "[t]he right to arrest . . . does not give rise to a privilege to use an unreasonable amount of force." Estate of Saylor v. Regal Cinemas, Inc., 54 F. Supp.3d 409, 423 (D.Md. 2014).

As discussed above, Drury has presented evidence sufficient to avoid summary judgment with regard to his claim that Defendants used excess force in effecting his arrest.  Hence, Defendants are not entitled to summary judgment on Drury's state law battery claim.  However, it appears that this claim may be duplicative of Drury's constitutional claims based on the use of excess force.  See Young v. Prince George's Cty., Maryland, 355

---

[4]    Although Maryland police officers are entitled to qualified immunity when performing their official duties, they lose such protection when they commit "an intentional tort or act [ ] with malice." DiPino v. Davis, 729 A.2d 354, 370 (Md. 1999); see also Ashton v. Brown, 339 Md. 70, 117, 660 A.2d 447, 470 (Md. 1995)(withholding public official immunity from false imprisonment and battery claims).

F.3d 751, 759 (4th Cir. 2004).

Accordingly the Court will deny summary judgment with regard to Drury's battery claim in Count I.


2. False Arrest

In Maryland, to establish a claim of false arrest a plaintiff must prove the defendant deprived him of his liberty "without consent and without legal justification." State v. Roshchin, 130 A.3d 453, 459 (Md. 2016).  When the "alleged deprivation involves an arrest by a law enforcement officer, the officer cannot be held 'liable for [false arrest or] false imprisonment in connection with that arrest if [he or she] had legal authority to arrest under the circumstances." Roshchin v. State, 100 A.3d 499, 507 (Md. App. 2014), rev'd, 130 A.3d 453 (Md. 2016)(quoting Montgomery Ward v. Wilson, 664 A.2d 916, 926 (Md. 1995)).

As discussed above, the Court concludes that there are genuine issues of material fact regarding the legality of Defendants' warrantless arrest of Drury.[5]   Hence, the Court will deny summary judgment on Drury's false arrest claim.

---

[5]    The factual dispute also prevents the Court from granting public official immunity for the false arrest claim.  In Thomas v. City of Annapolis, 688 A.2d 448, 456 (Md. Ct. App. 1997), the court held that a policeman "performing his or her discretionary

### 3. False Imprisonment

To establish a claim of false imprisonment a plaintiff must prove the same elements as claim of false arrest, which are outlined above.  See id. at 506 ("False arrest and false imprisonment share identical elements.").

As discussed above, factual issues persist concerning whether the Defendants possessed legal justification to arrest Drury.  Hence, Defendants are not entitled to summary judgment with regard to the false imprisonment claim.

### 4. Malicious Prosecution

To establish a malicious prosecution claim, a plaintiff must prove that:

---

duties within the scope of employment . . . generally will not have committed actionable conduct" because "the individual will not be guilty of an intentional tort in the first instance because the conduct is legally justified."  However, this instance of false arrest could possibly be an intentional tort depending on its legal justification, which hinges on the factual dispute.  Thus, the Defendants are not entitled to public official immunity at this time.

- A criminal proceeding was brought against plaintiff,

- The case terminated in the plaintiff's favor,

- The absence of probable cause, and

- Malice, meaning "a primary purpose in instituting the proceeding other than that of bringing an offender to justice."

Exxon Corp. v. Kelly, 381 A.2d 1146, 1149 (Md. 1978) (quoting

Safeway Stores, Inc. v. Barrack, 122 A.2d 457, 460 (Md. 1956)).

As discussed above, there was probable cause to prosecute Drury even if the probable cause was not adequate to justify a warrantless arrest.  Moreover, Drury has not presented evidence adequate to establish malice on the part of Dziwanowski and Hicks.

Hence Defendants are entitled to summary judgment with regard to Drury's malicious prosecution claim.

5. Conspiracy

In Maryland law, civil conspiracy is not recognized as an independent tort.  See Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc., 665 A.2d 1038, 1044-45 (Md. 1995).  The Court of Appeals has "consistently held that 'conspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." Id. at 1045 (quoting Alexander v. Evander, 650 A.2d

260, 265 n.8 (Md. 1994)).

Accordingly, Defendants are entitled to summary judgment with regard to Drury's claim that they can be liable, somehow, for entering into a conspiracy.  Of course, Drury can contend that both of Dziwanowski and Hicks should be held liable for the joint use of excess force.

   D.  Drury's Constitutional Claims

Drury contends that Defendants violated his rights guaranteed by the Fourth Amendment[6] to the United States Constitution and Articles 24[7] and 26[8] of the Maryland Declaration of Rights. The Maryland Court of Appeals recognizes that "Art[icle] 26 is considered in pari materia with the Fourth Amendment" Carter v. State, 788 A.2d 646, 652 (Md. 2002), and Article 24 is analyzed under Fourth Amendment and Fourteenth Amendment jurisprudence. See Okwa v. Harper, 757 A.2d 118, 141 (Md. 2000); Williams v. Prince George's Cty., 685 A.2d 884, 895

---

[6]   The Fourth Amendment to the United States Constitution provides, in pertinent part: "The right of the people to be secure in their persons, . . . against unreasonable . . . seizures, shall not be violated." U.S. Const. amend. IV.
[7]   Article 24 of the Maryland Declaration of Rights provides "[t]hat no man ought to be taken or imprisoned . . . or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."  Md. Const. Decl. of Rts. art. XXIV.
[8]   Article 26 states, "That all warrants, without oath or affirmation, . . . to seize any person or property, are grievous and oppressive." Md. Const. Decl. of Rts. art. XXVI.

(Md. Ct. App. 1996)("The essential analysis, however, is the same under Articles 24 and 26 of the Maryland Constitution as that under the Fourth Amendment.").  Hence, the state constitutional claims are duplicative of the federal constitutional claims.

Drury presents his federal constitutional claims pursuant to 42 U.S.C. § 1983 (2012).

To establish a § 1983 claim, a plaintiff must prove that a defendant:

1. Acted under color of state law,

2. Deprived him/her of a right secured by the Constitution, and

3. Is not entitled to qualified immunity.[9]

### 1.   Color of State Law

There is no doubt that all pertinent actions of Defendants were performed under color of state law, i.e., as state officials.

### 2. Deprivation of Rights

Drury contends that Defendants violated his Fourth Amendment and state constitutional rights by conducting an

---

[9]     That is, the right must have been clearly established at the time of events at issue. See Graham v. Gagnon, 831 F.3d 176, 182 (4th Cir. 2016). See discussion of qualified immunity below.

unreasonable search and seizure, depriving him of his liberty without due process, using excess force during the course of his arrest, unreasonably denying him medical treatment, and summarily punishing him.  Compl. ¶ 91.

These claims shall be addressed in turn.

### a.    Unreasonable Search and Seizure

Drury's unreasonable search and seizure claim is based upon his allegedly being arrested without legal authority (false arrest) and the warrantless home arrest (unlawful entry).

### i.    False Arrest

As discussed above in regard to Drury's state law false arrest claim, there are genuine issues of material fact that prevent a grant of summary judgment to Defendants on this claim.

### ii.    Unlawful Entry

It is undisputed that Defendants arrested Drury inside his home.  And it is well established that law enforcement officers may not arrest an individual inside of his home without a warrant absent exigent circumstances.  Payton v. New York, 445 U.S. 573, 590 (1980).   Police bear "a heavy burden" when trying to demonstrate an exception to the warrant requirement. Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984).

The Supreme Court has declined to outline a specific test for determining whether an exigent circumstance is present in a given case, but the Fourth Circuit has suggested five factors that could be relevant:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant;
>
> (2) the officers' reasonable belief that the contraband is about to be removed or destroyed;
>
> (3) the possibility of danger to police guarding the site;
>
> (4) information indicating the possessors of the contraband are aware that the police are on their trail; and
>
> (5) the ready destructibility of the contraband.

United States v. Reed, 935 F.2d 641, 642 (4th Cir. 1991) (quoting United States v. Turner, 650 F.2d 526, 528 (4th Cir. 1981)).  A court must also consider the severity of the offense. Welsh v. Wisconsin, 466 U.S. 740, 750 (1984).

"Exigent circumstances vary from case to case, and a determination of the issue is of necessity fact-specific." Osabutey v. Welch, 857 F.2d 220, 224 (4th Cir. 1988)).

Defendants assert that there were exigent circumstances justifying their warrantless entry into Drury's home. Specifically, they contend that they were in "hot pursuit" of Drury when they entered his home.  See United States v. Santana, 427 U.S. 38, 42-43 (1976).

It is doubtful that the hot pursuit exception should apply, given that the Defendants' arrival brought Drury to his door, there was "no immediate or continuous pursuit of [Drury] from the scene of [a] crime," and Drury thought the Defendants were there to see the bill of sale, not to arrest him.  Welsh, 466 U.S. at 753.

Nevertheless, it is not necessary for the Court to reach this question since there are genuine issues of material fact that prevent summary judgment in regard to the existence vel non of exigent circumstances warranting Defendants entry into Drury's home.

There may be no dispute that Defendants approached the door of Drury's home, which was located inside of a glass-enclosed front porch area, that Drury came to the doorway, and then retreated into his home and tried to close the door.  Nor does there appear to be a dispute that Defendants blocked the door from closing, pushed the door open, and followed Drury into his home where the arrest occurred.

However, there is conflicting evidence as to Drury's precise location at the time of the entry.  Compare Drury Dep. [ECF No. 25-9] 72:6-12 (standing inside his house with door halfway open before closing it to end conversation), with Hicks Dep. [ECF No. 21-5] 42:1-5 (standing on enclosed porch before

running back inside to evade order).  Courts have determined the suspect's position in the threshold area to be relevant to an exigent circumstances determination.  Compare United States v. Santana, 427 U.S. 38, 40 (1976)(exigency applies when suspect stood in open doorway of her house in public view before police arrived and retreated once police approached); United States v. McCraw, 920 F.2d 224, 229 (4th Cir. 1990)(no exigency when suspect opened hotel door halfway to answer the police's knock and then shut it).

Defendants also assert exigent circumstances based upon their belief that Drury threatened to damage the trailer.  However, as discussed above in regard to the false arrest claim, there are factual issues as to any such belief.

Accordingly, summary judgment shall be denied on the unlawful entry claim.

### b.  Deprivation of Liberty

Drury's deprivation of liberty claim is based upon his allegedly being held in custody without legal authority.

As discussed above in regard to Drury's state law false imprisonment claim, there are genuine issues of material fact that prevent a grant of summary judgment to Defendants on this claim.

### c. Excess Force

Executing an arrest with excess force is unreasonable under the Fourth Amendment. <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989); <u>see also</u> <u>Okwa</u>, 757 A.2d at 141 (evaluating excess force claim under Article 24 of the Maryland Declaration of Rights). For the reasons already stated herein, there are genuine issues of material fact that prevent a grant of summary judgment to Defendants on this claim.

### d. Denial of Medical Treatment

The Court will assume that the Fourth Circuit has recognized a Fourth Amendment or other claim based upon an unreasonable denial of medical treatment. Nevertheless, Drury has not presented evidence from which a reasonable jury could find that Defendants unreasonably denied him medical treatment.

Thus Defendants are entitled to summary judgment on the denial of medical treatment claim.

### e. Summary Punishment

Deprivation of recognized rights, for example by using excess force in an arrest can be described as "summary punishment." However, there does not appear to be any Fourth

Amendment claim for "summary punishment" per se.  Hence,
Defendants shall be granted summary judgment in regard to this
claim.

### 3.  Qualified Immunity

Defendants assert entitlement to qualified immunity from
Drury's federal[10] constitutional claims.

> "The doctrine of qualified immunity
> protects government officials from liability
> for civil damages insofar as their conduct
> does not violate clearly established
> statutory or constitutional rights of which
> a reasonable person would have known."
>
>                    *      *      *
>
> The shield of qualified immunity is
> lost when a government official (1) violates
> a constitutional right and (2) that right
> was clearly established.

Graham v. Gagnon, 831 F.3d 176, 182 (4th Cir. 2016)(internal
citations omitted).

The Court does not find that Defendants are entitled to
summary judgment based upon qualified immunity from Drury's
federal claims.  When viewing facts in a light most favorable to

---

[10]   Defendants are not entitled to common law public official
immunity for violations of the Maryland constitution. Lee v.
Cline, 863 A.2d 297, 305 (Md. 2004).

Drury, it is evident that his claims are based upon clearly established rights.

> For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

Hope v. Pelzer, 536 U.S. 730, 739 (2002)(quoting Anderson v. Creighton, 483 U.S. 635, 640, (1987))(internal citations omitted).

In the instant case, no reasonable officer could have believed it lawful to forcefully knee and punch a restrained individual who was outnumbered, unarmed, and not resisting arrest.  Similarly, no reasonable officer would believe it lawful to enter a person's home to effectuate a warrantless misdemeanor arrest if there was no reason to believe evidence would be destroyed or that the individual was fleeing arrest. Thus, if the jury found the facts as asserted by Drury, there could not be qualified immunity as to these claims.

However, there may be claims as to which Defendants would have a qualified immunity defense depending upon the jury's

resolution of disputed factual issues.  These issues shall be addressed with the parties prior to trial.


IV.  <u>CONCLUSION</u>

   For the foregoing reasons:

   1. The Motion for Summary Judgment [ECF No. 21] filed by
      Defendants is GRANTED IN PART and DENIED IN PART.

   2. Defendants are granted partial summary judgment:

      a. Dismissing the Count IV malicious prosecution claims
         and the Count V conspiracy claims.

      b. Dismissing any "summary punishment" and any denial of
         medical treatment § 1983 claims.

   3. The case shall proceed to trial on the following claims:[11]

      a. Battery (Count I)

      b. False Arrest (Count II)

      c. False Imprisonment (Count III)

      d. Constitutional Claims (state and federal)

         i. Unreasonable search and seizure (false arrest and
            unlawful entry)

         ii. Deprivation of liberty (false imprisonment)

         iii. Excess force

---

[11]   Subject to possible "consolidation" of duplicative claims.

4. Plaintiff shall arrange a telephone conference to be held
   by April 7, 2017 to address trial scheduling.


SO ORDERED, this <u>Friday, March 24, 2017</u>.


```
                        _____/s/_____
                          Marvin J. Garbis
                       United States District Judge
```